```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION


ALLEN RAY WARD,                  §
TDCJ-CID NO. 1263777,            §
                                 §
          Plaintiff,             §
                                 §
v.                               §    CIVIL ACTION NO. H-09-3511
                                 §
JAMES MASON, et al.,             §
                                 §
          Defendants.            §
```

## MEMORANDUM OPINION AND ORDER

Allen Ray Ward, a prison inmate of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), has filed a prisoner civil rights complaint against TDCJ-CID officials claiming that they have exposed him to a dangerous environment by assigning him to a job where tobacco trafficking was taking place. He names electrical work supervisors James Mason, Monty Atwood, and Michele Davis as defendants along with Captain Michael D. Barnett, Major Billy J. Reeves, Major Bradley K. Hutchinson, and Assistant Warden John P. Werner. Ward has filed an Application to Proceed In Forma Pauperis. After examining the pleadings, the court has determined that this action should be dismissed as frivolous.

### I. Claims and Allegations

Ward complains that he was assigned to a job crew by officials who were aware that the crew was trading in tobacco products, which

is prohibited by TDCJ-CID regulations. Ward states that he was transferred to the TDCJ-CID Ellis Unit in March of 2008 to work as part of the H-Rom Highline electrical crew. (Docket Entry No. 1 at 9) When he arrived at Ellis he appeared before the Classification Committee, which included Captain Barnett. Ward alleges that Captain Barnett warned him that the Highline crew had a reputation of tobacco trafficking. Id. Ward responded by informing Captain Barnett that he had a prior disciplinary case for possessing twelve packs of loose tobacco and four cans of snuff. He further stated that the decision against him was overturned on appeal. Ward alleges that he asked the Classification Committee to assign him to "Livestock" because he did not want to work with a crew that might be trading illegal products, particularly tobacco. The request was denied.

Ward was interviewed on the first day that he began working with H-ROM. He told the interviewer, Cliff Davis, about the warning he received concerning the Highline crew and his prior charge of possessing tobacco. Ward asked Davis for assistance in getting transferred to another job. Davis responded that he could not help Ward but that Ward should ask his supervisor, James Mason, for a job change. Ward then asked Mason for a job transfer, which Mason denied.

Ward worked for the Highline crew for several months and saw tobacco products being stashed and delivered in work vehicles on

numerous occasions. He also saw money transactions between inmates and Mason. (Docket Entry No. 1 at 10) Ward repeated his request for a job change several more times during that period. Each time Mason refused to acquiesce. Ward alleges that Mason pressured him to act as his "boy" by setting up tobacco transactions with other inmates. Id. at 11, 46. By May of 2009 Mason indicated that he might be willing to transfer Ward if a new inmate was assigned to the crew; however, he also indicated that he was annoyed to hear that Ward had gone to Mason's supervisor about getting a job change. Mason stated that accidents do happen to inmates on the job, especially to a snitch.

On May 26, 2009, Ward traveled with the Highline crew to work on some lights and a switch gear box at the TDCJ-CID Wynne Unit. Id. at 10. The crew then went to the TDCJ-CID Goree Unit to eat. As they were leaving the back gate, two officers ordered Ward and another inmate named Wiess to get out of their truck so they could search it. After the search was complete, Mason and the crew were instructed to go back to the Wynne Unit. When they arrived at Wynne two captains handcuffed Ward and Wiess and took them to the Trustee Camp office for questioning.

During the interrogation Ward was asked if he had ever witnessed Mason selling or transporting tobacco products or receiving money from inmates for such activities. Id. Remembering Mason's threats, Ward declined to answer stating that due to the

large number of inmates and officials involved in the tobacco trafficking, he did not know who he could trust.  Ward was then sent back to Ellis where Major Reeves, assisted by Warden Werner, interrogated him further about Mason's activities on May 26. (Docket Entry No. 1 at 11)  During the interrogation Major Reeves allegedly stated that there was a video recording of Ward going in and out of the switch gear box with bags of tobacco and tobacco products.  When Ward protested his innocence Reeves accused him of lying and asked him if he ever supplied other inmates with tobacco products.  Ward denied this, and Reeves again accused him of being a liar.  Major Reeves then asked Ward if he ever used tobacco since his transfer to the Highline crew.  Hoping to appease Reeves, Ward admitted that he had used tobacco dip, although he claims in his pleading that he actually had not.  Id.

Upon hearing Ward's admission, Major Reeves handcuffed Ward and took him to Pre-hearing Detention where he was charged with use or possession of tobacco products in violation of TDCJ-CID regulations.  See Disciplinary Report #20090260756, Docket Entry No. 1 at 26.  A few hours later Ward was informed that he had also been charged with illegal storage of property.  See Disciplinary Report #20090259478, Docket Entry No. 1 at 29-29.  Two days later Ward pleaded guilty to both charges before a disciplinary hearing officer who found Ward culpable based on his admission along with the complaining officer's reports.  Ward was punished accordingly:

(1) illegal storage -- thirty days of commissary and cell restriction and class reduction from Trustee 2 to Trustee 3; (2) tobacco use -- thirty days of commissary and cell restriction, fifteen days of solitary confinement, and class reduction from Trustee 3 to Line Class 1.  See Docket Entry No. 1 at 26, 28.

On May 30, 2009, Ward went before the Ellis Unit Classification Committee consisting of Major Reeves, Major Hutchinson, and Captain Ellis. (Docket Entry No. 1 at 11)  After reviewing the recent disciplinary actions against Ward, the committee demoted him to medium custody and moved him to medium custody housing.  In addition, Ward's craft shop privileges were revoked and a freeze was placed on his inmate trust fund.  Id.; see also Docket Entry No. 1 at 42, 44.  Ward appealed the actions taken against him.  His appeals were denied.  (Docket Entry No. 1 at 31-40)  On August 18, 2009, Ward was placed in transient status, which he alleges was done in order to harass and intimidate him in retaliation for filing grievances.  (Docket Entry No. 1 at 12)

Ward accuses Mason of knowingly involving him in illegal trafficking.  (Docket Entry No. 1 at 12) Although Ward admits that he was never attacked, he contends that his placement in the Highline crew exposed him to a substantial risk of assault.  Id. He further contends that Monty Atwood, Michele Davis, Michael Barnett, Billy J. Reeves, Bradley K. Hutchinson, and John P. Werner are culpable for taking no action to stop Mason from violating

Ward's right to be free from unreasonable risk of physical danger. He therefore concludes that the defendants were deliberately indifferent to his health and safety. (Docket Entry No. 1 at 14) Ward also argues that the defendants retaliated against him for not cooperating with their investigation and for filing grievances relating to the wrongs done against him. Id. at 13-14. He contends that the retaliation occurred when the defendants failed to investigate and remedy Mason's wrongful tobacco activities. Id.

Ward seeks a declaratory judgment against the defendants holding that they violated his Eighth Amendment right to a reasonably safe work environment by knowingly assigning him to a job where there were illegal transactions taking place. Id. at 15. He also seeks an undetermined amount in punitive and compensatory damages. Id. at 17.

## II.  Analysis

Ward brought this action under the provisions of 42 U.S.C. § 1983. To state a claim under section 1983 "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." James v. Texas Collin County, 535 F.3d 365, 373 (5th Cir. 2008), quoting Moore v. Willis Independent School Dist., 233 F.3d 871, 874 (5th Cir. 2000). Pursuant to the Eighth Amendment of the Constitution's prohibition against cruel and unusual punishment,

prisoners have a right not to be subjected to dangerous living and work conditions where they might be attacked by other prisoners. See Farmer v. Brennan, 114 S.Ct. 1970, 1976 (1994). However, the Eighth Amendment mandates "reasonable" safety, not "absolute" safety. See Newton v. Black, 133 F.3d 301, 307 (5th Cir. 1998). It is not reasonable to expect that all inmate-on-inmate violence be prevented. Adames v. Perez, 331 F.3d 508, 512 (5th Cir. 2003), citing Farmer. Moreover, a prisoner must show that prison officials intentionally assigned him to a position knowing that it was dangerous and deliberately ignored the danger. Id.; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995). Ward's allegations that some of the officials were aware of the Highline crew's reputation for illicit activities includes no facts indicating any actual violence or that there was any real physical danger involved in the work.

Ward complains about his work assignment and the refusal of the prison authorities to change it. He does not have the right to choose his prison job and can be compelled to work. Olim v. Wakinekona, 103 S.Ct. 1741, 1745 (1983); Loving v. Johnson, 455 F.3d 562, 563 (5th Cir. 2006). Ward's vague and unsubstantiated fears that he might have been assaulted by inmates involved in the illicit tobacco trade do not constitute a showing that any reasonable official should have known that the job assignment posed any danger. Babcock v. White, 102 F.3d 267, 271-72 (7th Cir. 1996)

(plaintiff's fears that he would be attacked by other inmates, who were gang members at the plaintiff's unit of incarceration, did not establish a violation of plaintiff's rights where no attack occurred). Moreover, the fact that no attack ever occurred, or was even attempted, bars any recovery because Ward has suffered no physical injury as a result of the assignment. Id.; Jones v. Greninger, 188 F.3d 322, 326 (5th Cir. 1999). See also Alexander v. Tippah County, Miss., 351 F.3d 626, 631 (5th Cir. 2003) (prisoner cannot recover for damages where there is no evidence that he suffered any physical harm for the allegedly inhumane conditions), citing 42 U.S.C. § 1997e(e).

Ward complains of the subsequent disciplinary charges brought against him and resulting sanctions imposed. However, he was given notice of the charges and provided a hearing where he was found guilty based upon his own confession. He has been afforded due process available to a prisoner in an administrative proceeding, and his admission was sufficient evidence to uphold the hearing officer's decision. Wolff v. McDonnell, 94 S.Ct. 2963 (1974); Banuelos v. McFarland, 41 F.3d 232, 234 (5th Cir. 1995). Moreover, his temporary loss of privileges (commissary and cell restriction) are not punishments that implicate any concerns protected by due process. Sandin v. Conner, 115 S.Ct. 2293, 2300 (1995); Malchi v. Thaler, 211 F.3d 953, 958 (5th Cir. 2000). Ward's demotion in time-earning status is not actionable because he does not have a

constitutionally cognizable "right" to a particular time-earning status. Malchi, 211 F.3d at 959. If Ward's actual loss of time has affected his date of release, he must challenge the administrative decision by filing a habeas petition and obtain a favorable determination before seeking damages in a civil rights proceeding. Edwards v. Balisok, 117 S.Ct. 1584, 1589 (1997). See also Clarke v. Stalder, 154 F.3d 186, 189 (5th Cir. 1998). Otherwise, Ward cannot proceed on such a claim in this civil rights action because a judgment in Ward's favor would imply that the length of his sentence is invalid. Id. See also Sheldon v. Hundley, 83 F.3d 231, 233 (8th Cir. 1996).

Ward also complains about the custody reclassification and housing assignment that were made after his disciplinary hearings. Such decisions are left to the discretion of the prison officials and are not subject to court scrutiny. Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999); Wilkerson v. Stalder, 329 F.3d 431, 2003 WL 1969230 (5th Cir. 2003). Ward has not presented any facts that imply that the reassignment and attendant loss of privileges has caused him to suffer any 'atypical and significant hardship' that would be a violation of his constitutional rights. Hernandez v. Velasquez, 522 F.3d 556 (5th Cir. 2008); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003), citing McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990) (prison officials are accorded wide deference in classifying a prisoner's custodial status).

Ward's retaliation claim has no merit. While mindful that inmates are vulnerable to retaliation by their custodians, the court must also be wary and exercise common sense when considering such claims. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) ("'The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.'"), quoting Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006), quoting McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998). Ward complains that the defendants refused to investigate his grievance about Mason's tobacco dealings in retaliation for his refusal to cooperate with their investigation concerning the same subject. Apart from wanting to have it both ways regarding the investigation (i.e. Ward wants the defendants to investigate the case despite his refusal to help in the investigation), Ward's allegation that his grievance was not properly handled does not support a claim that his constitutional rights were violated. See, e.g., Jones v. North Carolina Prisoners

-10-

Labor Union, 97 S.Ct. 2532, 2544 (1977) (Burger, J., concurring) (commending prisons' adoption of grievance procedures, but expressly declining to suggest that such procedures are "constitutionally mandated"); Adams, 40 F.3d at 75 (holding that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state"); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) ("A prison grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates.  Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment."); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (concluding that federal regulations providing for an administrative remedy procedure in the Bureau of Prisons "do not in and of themselves create a liberty interest in access to that procedure").

In essence, Ward complains about the unfavorable outcome of the grievance and disciplinary system.  If he were allowed to proceed with this claim, it would open the door for every inmate to assert a claim of retaliation whenever he is disciplined for misconduct.  See Adams, 40 F.3d at 74 ("Every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.").  Ward's claim of retaliation has no legal basis because it relies only on conclusory allegations and contains no facts that indicate a retaliatory

intent by any of the defendants.  Enlow v. Tishomingo County, Miss., 45 F.3d 885, 889 (5th Cir. 1995).  Moreover, there are no facts showing that he was subjected to any action that would deter a person of ordinary determination from exercising his constitutional rights.  Morris v. Powell, 449 F.3d at 686. Therefore, Ward's retaliation claim is subject to dismissal.

Ward has filed this prisoner civil rights action without paying the filing fee in advance.  He also failed to submit an Application to Proceed In Forma Pauperis although he did submit a Declaration of Inability to Pay Costs.  (Docket Entry No. 1 at 18) Prisoner complaints are subject to screening, and frivolous complaints shall be dismissed without serving the defendants, regardless of whether the filing fee is paid in advance.  28 U.S.C. § 1915A; Martin v. Scott, 156 F.3d 578, 579 (5th Cir. 1998).  After reviewing Ward's extensive pleadings, supported by affidavits and records, this court has determined that his complaint should be dismissed as frivolous.  Jones v. Greninger, 188 F.3d 322, 326-27 (5th Cir. 1999); Jacquez v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986).

Ward shall be ordered to pay the fee incurred for filing this action.  Hatchet v. Nettles, 201 F.3d 651 (5th Cir. 2000).  The TDCJ-CID Inmate Trust Fund shall be ordered to withdraw twenty percent of each deposit made to Ward's inmate trust account until the entire fee ($350.00) has been paid.

intent by any of the defendants.  Enlow v. Tishomingo County, Miss., 45 F.3d 885, 889 (5th Cir. 1995).  Moreover, there are no facts showing that he was subjected to any action that would deter a person of ordinary determination from exercising his constitutional rights.  Morris v. Powell, 449 F.3d at 686. Therefore, Ward's retaliation claim is subject to dismissal.

Ward has filed this prisoner civil rights action without paying the filing fee in advance.  He also failed to submit an Application to Proceed In Forma Pauperis although he did submit a Declaration of Inability to Pay Costs.  (Docket Entry No. 1 at 18) Prisoner complaints are subject to screening, and frivolous complaints shall be dismissed without serving the defendants, regardless of whether the filing fee is paid in advance.  28 U.S.C. § 1915A; Martin v. Scott, 156 F.3d 578, 579 (5th Cir. 1998).  After reviewing Ward's extensive pleadings, supported by affidavits and records, this court has determined that his complaint should be dismissed as frivolous.  Jones v. Greninger, 188 F.3d 322, 326-27 (5th Cir. 1999); Jacquez v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986).

Ward shall be ordered to pay the fee incurred for filing this action.  Hatchet v. Nettles, 201 F.3d 651 (5th Cir. 2000).  The TDCJ-CID Inmate Trust Fund shall be ordered to withdraw twenty percent of each deposit made to Ward's inmate trust account until the entire fee ($350.00) has been paid.

### III.  Conclusion

The court **ORDERS** the following:

1. This Prisoner Civil Rights Complaint filed by Inmate Allen Ray Ward, TDCJ-CID No. 1263777 (Docket Entry No. 1), is **DISMISSED with prejudice** because it is frivolous.  28 U.S.C. § 1915A.

2. The TDCJ Inmate Trust Fund is **ORDERED** to deduct funds from Ward's inmate trust account and forward them to the Clerk on a regular basis in compliance with the provisions of 28 U.S.C. § 1915(b) and the terms of this Memorandum Opinion and Order until the entire filing fee ($350.00) has been paid.

3. The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties; the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas 78711, Fax Number 512-936-2159; the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, Fax Number 936-437-4793; and the Pro Se Clerk, United States District Court, Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas 75702.

**SIGNED** at Houston, Texas, on this 4th day of December, 2009.

SIM LAKE
UNITED STATES DISTRICT JUDGE